# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| JAMES CRAIG GREINER,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | No. 15-CV-4075-LTS<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff, James Craig Greiner (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant asserts he has been disabled since August 17, 2012. Doc. 14, ¶2; AR 13, 198, 225. The Commissioner found claimant was not disabled. Claimant contends the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision finding that claimant was not disabled. In particular, claimant alleges the ALJ erred in disregarding his treating physician's opinions, in assessing claimant's credibility, and in evaluating the medical evidence. Doc. 17, at 1-2.

For the reasons that follow, I recommend the Court affirm the Commissioner's decision.

## I. PROCEDURAL HISTORY

Claimant applied for DIB on October 4, 2012. Doc. 14, ¶1; AR 13. In January and March 2013, the Commissioner denied claimant's application initially and upon reconsideration. Doc. 14, ¶¶3 & 5; AR 125-28, 132-35. Claimant then requested a hearing before an Administrative Law Judge (ALJ). Doc. 14, ¶6; AR 141-42. On March 19, 2014, the ALJ conducted a hearing at which claimant and a vocational expert testified. Doc. 14, ¶7; AR 64-96. On May 5, 2014, the ALJ issued a decision denying claimant's application. Doc. 14, ¶8; AR 10-23. The ALJ found: claimant did not have an impairment of a severity that made him disabled; and, his residual functional capacity (RFC) allowed him to perform light work. AR 16-17.

On July 8, 2015, the Appeals Council denied claimant's request for review of the ALJ's decision. Doc. 14, ¶10; AR 1-4. The ALJ's decision stands as the final decision of the Commissioner. 20 C.F.R. § 416.1481.

Claimant filed a complaint in this Court on September 11, 2015, seeking review of the Commissioner's decision. Doc. 3. This matter has been referred to a Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for the filing of a report and recommended disposition. The parties have briefed the issues, and on April 21, 2016, the Court deemed this case ready for decision. Doc. 22.

## II. RELEVANT FACTS

Claimant was born in 1960, completed high school, and was 53 years old at the time of the hearing. Doc. 14, ¶¶12-13; AR 70, 73. He has past relevant work as a sales supervisor, but his work was described as being a truck driver delivering adult beverages within a 100 mile radius of his residence. AR 70.

Claimant injured his left shoulder in January 2011, which resulted in two surgeries in 2011. Doc. 14, ¶¶27-28, 31, 49. Despite the surgeries, claimant's strength and range of motion remained impaired. Doc. 14, ¶56. Claimant also has a history of chronic chest pain syndrome and shortness of breath. Doc. 14, ¶¶29-30, 72. Claimant testified that his primary medical problem keeping him from working was the pain in his coccyx (his tailbone), which made it painful to sit or stand. Doc. 14, ¶14; AR 81. This problem began in mid-December 2011. Doc. 14, ¶60; AR 732-35. Claimant testified that he had difficulty sitting while driving his delivery truck and was in "much pain" by the end of the day because he could not take painkillers while driving. Doc. 14, ¶16; AR 87. Claimant admitted, however, that he still drives himself "around town to doctor appointments and to the grocery store." Doc. 14, ¶17; AR 74. Doctors have treated this pain with epidural steroid injections. Doc. 14, ¶¶64, 66, and 68.

Claimant testified that he has to lay down two or three times a day. Doc. 14, ¶18; AR 87. He testified he could sit for an hour before having to stand for fifteen to thirty minutes. Doc. 14, ¶19; AR 88-89. Claimant said he could lift up to 40 pounds. Doc. 14, ¶20; AR 89.

### III. THE ALJ'S FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since August 17, 2012, the alleged onset date. 20 C.F.R. § 404.1571.

3. The claimant has the following severe impairments: obesity, degeneration of the bilateral shoulders, bilateral medium neuropathy of the wrists, emphysema, and coronary artery disease. 20 C.F.R. § 404.1520(c).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

5. The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) in that he can lift 20 pounds occasionally and 10 pounds frequently; can stand and/or walk about 6 hours out of an 8 hour workday, with normal breaks; can sit for about 6 hours out of an 8 hour workday, with normal breaks; and push and/or pull the same weights; except the claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; must avoid climbing ladders, ropes, or scaffolds; can frequently finger and handle; must avoid overhead reaching with the upper left, non-dominant, extremity; and must avoid concentrated exposure to dangerous moving machinery, unprotected heights, fumes, odors, dust, gases, environments with poor ventilation, cold temperature extremes, and vibration.

6. The claimant is unable to perform any past relevant work. 20 C.F.R. § 404.1565.

7. The claimant was born on September 7, 1960, and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. 20 C.F.R. § 404.1563.

8. The claimant has at least a high school education and is able to communicate in English. 20 C.F.R. § 404.1564.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. *See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1569 and 404.1569(a).

>       11. The claimant has not been under a disability, as defined in the Social Security Act, from August 17, 2012, through the date of this decision. 20 C.F.R. § 404.1520(g).

AR 15-23.

## IV. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. An individual has a disability when, due to her physical or mental impairments, she "is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see also Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. § 416.972(a)-(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a); *see also* 20 C.F.R. §§ 416.920(c), 416.921(a); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of her past relevant work. If the claimant cannot do her past relevant work, then she is considered disabled. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of her application that was substantial gainful activity

6

and lasted long enough for the claimant to learn how to do it. 20 C.R.F. § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. § 416.945(a)(1). The RFC is based on all relevant medical and other evidence. 20 C.F.R. § 416.945(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC, as determined in Step Four, will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 416.912(f), 416.920(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v). At step five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. 20 C.F.R. § 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps, the ALJ has determined the claimant is disabled, but there is medical evidence of substance use disorders, the ALJ must decide if that substance use is a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without

the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. § 416.935.

## V.    *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health &*

*Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## VI. DISCUSSION

Claimant argues the ALJ erred in three ways. First, claimant alleges the ALJ failed to give sufficient weight to claimant's treating physician. Second, claimant alleges the ALJ erred in discounting claimant's credibility. Third, claimant alleges the Appeals Council erred when it rejected medical records submitted after the ALJ's decision. I address each of these arguments in turn.

### A. *Claimant's Treating Physician*

Claimant argues the ALJ should have given great weight to claimant's treating physician, Dr. Kevin Folchert. Doc. 17, at 5-6. The Commissioner argues that the ALJ properly discounted Dr. Folchert's opinions because he did not treat claimant during the period of alleged disability and rendered opinions that were unsupported by, and

9

inconsistent with, medical evidence. Doc. 18, 7-12. I find the ALJ gave proper weight to Dr. Folchert's opinions.

First, the last time Dr. Folchert treated claimant was August 20, 2012, which is three days after the alleged onset of disability. AR 20, 755-58. On December 4, 2012, a little more than three months later, Dr. Folchert completed a "Physical Capacities Evaluation" form. AR 871-876. In this form, Dr. Folchert opined that claimant could lift and carry up to ten pounds frequently and up to twenty pounds occasionally. AR 871. He opined claimant could sit, stand, and walk for up to two hours in an eight-hour workday, with normal breaks. *Id*. Dr. Folchert opined that claimant could occasionally crawl, but could seldom bend, squat, climb, or reach above shoulder level. AR 872. He further limited claimant to never working at unprotected heights, seldom working around machinery, and occasionally working while exposed to marked changes in temperature and humidity. *Id*. The ALJ's RFC findings largely incorporated these limitations. AR 16.

The ALJ did not credit other opinions of Dr. Folchert. In his December 4, 2012, form, Dr. Folchert also opined that claimant would need to walk around and leave the work station at times other than during regular breaks, for fifteen to twenty minutes; walk around for ten to twenty minutes; shift from sitting, standing, or walking at will every fifteen to twenty minutes, and lie down during the work-shift two to four times. AR 872. The ALJ gave these limitations "little weight" because this portion of Dr. Folchert's opinion was "not based on medical evidence, [was] not based on examination or other information after the alleged onset date, and does not provide a reliable basis for evaluating the claimant's condition." AR 20. The ALJ also gave "no weight" to Dr. Folchert's opinion that claimant had a "disabling" condition. *Id*.

Although Dr. Folchert did not see claimant again, he, nevertheless, submitted a letter on February 19, 2013, opining that claimant's tailbone pain would prevent him

from sitting for prolonged periods of time, and that claimant has pain when rising from a seated position, squatting, and lifting. AR 878. The ALJ gave the opinions in this letter "little weight" because it was not based on any new examination and was not supported by the medical evidence that did exist. AR 20.

Finally, Dr. Folchert submitted yet another letter on March 14, 2014, opining that claimant's tailbone pain precludes claimant from sitting, driving, or standing for prolonged periods, and claimant's shoulder pain would limit claimant's ability to lift, push, and pull. AR 880. Dr. Folchert concluded this letter with the opinion that claimant was permanently disabled and could not return to his past work. AR 879. The ALJ found these limitations were again not based on any new examinations or on past medical records and afforded Dr. Folchert's opinions that claimant is disabled "very little weight." AR 20-21.

An ALJ must give a treating physician's opinion controlling weight, but only if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other medical evidence. *House v. Astrue*, 500 F.3d 741, 744 (8th Cir. 2007). An ALJ need not give any weight to a treating physician's opinions that a claimant is disabled as that is a conclusion reserved to the Commissioner to make. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (doctor's opinion that claimant is disabled involves issue reserved to Commissioner and is not the type of medical opinion to which Commissioner gives controlling weight). Moreover, the ALJ acted within his zone of choice in discounting claimant's treating physician's opinions under the facts of this case.

A "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." 20 C.F.R. § 404.1502. Dr. Folchert did not, however, treat claimant during the period when claimant asserts he was disabled. *See*, *e.g.*, *Postels*

*v. Barnhart*, 55 Fed. App'x 392, 393 (8th Cir. 2003) ("The ALJ properly rejected the retrospective testimony of Postels's treating physicians because they had limited contact with Postels during the relevant time period."); *Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir. 1997) (affirming an ALJ's rejection of a doctor's opinion when the doctor did not treat the claimant during the period of alleged disability). See also *Saxon v. Astrue*, 781 F. Supp. '2d 92, 103 (N.D.N.Y. 2011) (finding no error for ALJ to reject treating physician's opinion when physician did not see claimant during period of alleged disability).

Further, the Physical Capacity Evaluation form did not support Dr. Folchert's opinions. Dr. Folchert left blank the portion of the Physical Capacities Evaluation form where he was to describe laboratory findings that supported his opinion. AR 876. Therefore, the ALJ could properly discount Dr. Folchert's opinion when it is unsupported by medical evidence. *See Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007) (holding an ALJ properly discounted a treating physician's opinions where the limitations listed on the form stood alone and were not supported by medical records).

Dr. Folchert's opinions were also inconsistent with other medical records. AR 501-506, 659. *See Stormo*, 377 F.3d at 806 (treating physicians' conclusory and inconsistent opinions properly discounted). Indeed, Dr. Folchert's opinions were inconsistent with his own medical records. AR 851 (June 2012 records show no acute distress, lower extremity strength and range "grossly intact," and no report of radiating pain); 775-78 (August 20, 2012, records show no complaint of tailbone pain). *See Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009) (holding that an ALJ may properly discount a treating doctor's opinions to the extent they are inconsistent with that doctor's own records). Rather, Dr. Folchert's opinions could only have been based on claimant's subjective claims of pain because the medical records do not support them. *See McDade*

*v. Astrue*, 720 F.3d 994, 999 (8th Cir. 2013) (holding that an ALJ may properly discount a treating physician's opinion when based on subjective complaints by claimant).

Finally, the ALJ's conclusions were bolstered by a consulting physicians' opinions. Dr. Matthew Byrnes, D.O., reached conclusions similar to Dr. Folchert's initial December 4, 2012, opinions that claimant could lift ten to twenty pounds, could sit, stand, and or walk for six out of eight hours a day, but should have some other limitations. AR 103-107. Similarly, Dr. Donald Shumate, D.O., opined that claimant was limited to work at a light exertional level, with limitations similar to those Dr. Byrnes found appropriate. AR 111-23. The ALJ gave these opinions significant weight (AR 21) and incorporated these limitations in the RFC findings (AR 16).

Ultimately, a claimant bears the burden of proving he is disabled. 20 C.F.R. § 404.1520(a)(4)(iv). *See also Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). Claimant did not carry this burden. Here, the ALJ properly considered claimant's former treating physician's medical records, and accorded that doctor's opinions limited weight consistent with the medical records. This was within the zone of choice afforded an ALJ.

### B. *The ALJ's Credibility Assessment*

Claimant argues the ALJ improperly evaluated his subjective complaints and considered his not fully credible. Doc. 17, at 6-7. When determining residual functional capacity, an ALJ must evaluate the claimant's credibility regarding his subjective complaints. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). In doing so, an ALJ must consider objective medical evidence and any evidence relating to a claimant's daily activities; duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ does not have to discuss each *Polaski* factor as long as the ALJ recognizes and considers the *Polaski* analytical framework. *Tucker v. Barnhart,* 363 F.3d 781, 783

13

(8th Cir. 2004). "Although the ALJ may disbelieve a claimant's allegations of pain, credibility determinations must be supported by substantial evidence." *Jeffery v. Sec'y of Health & Human Servs.*, 849 F.2d 1129, 1132 (8th Cir. 1988) (internal citation omitted). "Moreover, the ALJ must make express credibility determinations and set forth the inconsistencies in the record that lead him to reject the claimant's complaints." *Id.* "Where objective evidence does not fully support the degree of severity in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (internal citation omitted). In evaluating a claimant's subjective complaints of pain, an ALJ may rely on a combination of his personal observations and a review of the record to reject such complaints. *Lamp v. Astrue,* 531 F.3d 629, 632 (8th Cir. 2009). The ALJ may not solely rely on his personal observations to reject such claims. *Id.* Thus "[s]ubjective complaints can be discounted [by the ALJ] where inconsistencies appear in the record as a whole." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) (citing to *Polaski* opinion).

The court now turns to review the record and the ALJ's decision with the following yardstick in mind that "[claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards*, 314 F.3d at 966 (citing to *Pearsall,* 274 F.3d at 1218). In this case, the ALJ considered claimant's subjective complaints and found his medical impairments could reasonably be expected to cause the alleged symptoms, but concluded his "statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible." AR 18. The ALJ explicitly referenced the *Polaski* factors in his decision. AR 17. In reaching this conclusion, the ALJ reviewed at length the objective medical evidence. AR 17-21. In doing so, the ALJ noted that claimant did not seek ongoing treatment for his alleged impairments after the alleged onset date. AR 19-20. This was a proper factor in assessing claimant's credibility. *See Gregg v. Barnhart*,

354 F.3d 710, 713 (8th Cir. 2003) (affirming ALJ's conclusion that claimant's history of inconsistently seeking treatment since alleged onset of disability detracted from claimant's credibility); *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) (holding that the ALJ properly considered claimant's infrequent medical treatment in discounting the claimant's credibility). The ALJ also properly considered claimant's daily activities, which included driving, walking, lifting up to forty pounds, personal care tasks, preparing meals, washing dishes, shopping for groceries, and mowing the yard. AR 74, 89, 247-49. The ALJ could properly discount claimant's credibility given the extent of these daily activities. *See Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (holding that activities such as cooking, driving, shopping, and doing laundry are inconsistent with subjective complaints of disabling pain).

Claimant's reliance *on Holmstrom v. Massanari*, 270 F.3d 715, 722 (8th Cir. 2001), is misplaced. In *Holmstrom,* the court found the medical evidence, in particular a recent MRI, supported the claimant's subjective pain complaints. That type of medical record support is missing here. Indeed, an MRI performed on December 16, 2011, showed claimant's coccyx was normal (AR 767), and a CT scan in January 2012 also showed a normal reading (AR 881).

Credibility of a claimant's subjective testimony is primarily for the ALJ, not the reviewing court, to decide. *Pearsall,* 274 F.3d at 1218. If the ALJ gives a good reason for discrediting a claimant's credibility, then the court will defer to the ALJ's judgment "even if every factor is not discussed in depth." *Dunahoo v. Apfel,* 241 F.3d 1033, 1038 (8th Cir. 2001). I find there is substantial evidence to support the ALJ's credibility finding, and his assessment is within the zone of choice afforded the ALJ.

### C. New Evidence Claim

Claimant argues the Appeals Council erred because it failed to consider evidence of claimant's post-hearing treatment. Doc. 17, at 7-8. Specifically, claimant submitted

records from Pierce Street Same Day Surgery (Same Day Surgery) (for the period January 9, 2015, through February 4, 2015) (AR 40-63), and from the Siouxland Pain Clinic (the Pain Clinic) (for the period March 23, 2015, through April 24, 2015). AR 30-37. The ALJ decided this case on May 5, 2014. Accordingly, the Appeals Council determined the records did not relate to the validity of the ALJ's decision. AR 2. Claimant argues that because these records referenced prior medical treatment, this Court should remand the case because "it is likely these records would have impacted the ALJ's analysis." Doc. 21, at 3-4. The Commissioner argues the Appeals Council properly found the new evidence was not relevant because it occurred after the ALJ's decision. Doc. 18, at 15-16.

"When the Appeals Council denies review of an ALJ's decision after reviewing new evidence, '[courts] do not evaluate the Appeals Council's decision to deny review, but rather [courts] determine whether the record as a whole, including the new evidence, supports the ALJ's determination.'" *McDade*, 720 F.3d at 1000 (quoting *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000)). A remand is proper only if the new evidence is relevant and probative of the claimant's condition for the time period for which the benefits were denied. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). *See also Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991) (holding that new evidence is relevant only if it relates to claimant's condition on or before the ALJ's decision).

Here, the new evidence cited by claimant is not relevant to the ALJ's decision because it does not relate to claimant's condition at the time under consideration by the ALJ. The Pain Clinic records, which are dated almost a year after the ALJ's decision, pertain to two additional steroid shots injected after the ALJ's decision, and the only reference to his condition, prior to that time, relates to his past symptoms and treatment. The Same Day Surgery records, dated approximately seven months after the ALJ's

decision, appear to pertain to some type of surgery. Only in references to past treatment and medical history do they relate to the period of alleged disability. *See*, *e.g.*, AR 41, 54. To the extent the records contain references to claimant's pain, they reference to periods of time well after the ALJ's decision. There is nothing in these records that pertains to claimant's condition prior to the ALJ's decision, and in any event there is nothing in these records materially different from the pre-existing medical records. None of these records purports to reflect an opinion about claimant's condition or limitations during the time of his alleged disability.

Claimant's relies on two non-binding, district court decisions from other districts: *Kirkland v. Colvin*, 2016 WL 632582 (S.D. Ala. Feb. 17, 2016), and *Norris v. Colvin*, 2015 WL 5783801 (D.S.C. Sept. 29, 2015). Claimant cites these cases for the proposition that the date on the face of a new medical record is not controlling if the content of the medical record shows it relates back to the time period of the alleged disability. He is correct. These cases are, however, readily distinguishable from the case at bar. In *Kirkland*, the new medical records were from a doctor who saw the claimant prior to the ALJ's decision, the medical records referenced dates prior to the ALJ's decision, and reflected the doctor expressly relied on prior medical records in reaching his opinion. *Kirkland*, 2016 WL 632582, at * 9-10. Similarly, in *Norris,* the medical report specifically "indicat[ed] that it realte[d] back to [a period] three years prior to the ALJ's decision." *Norris*, 2015 WL 5783801, at *4. The new medical records claimant relies on in this case do not expressly relate to or involve the period of the alleged disability, and do not reflect opinions based on prior treatment, and neither doctor treated claimant during that time period.

In summary, there is nothing in the new medical records that would suggest the ALJ would reach a different conclusion, and nothing in them that calls into question my

conclusion that the ALJ's decision that claimant's is not disabled is based upon substantial evidence in the record as a whole.

## VII. CONCLUSION

For the reasons set forth herein, and without minimizing the seriousness of claimant's impairments, I RESPECTFULLY RECOMMEND that the Court **affirm** the Commissioner's determination that claimant was not disabled and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* Fed. R. Civ. P. 72.  Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein.  *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 17th day of May, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa