# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| JAMES CRAIG GREINER,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. C15-4075-LTS<br><br>**MEMORADUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

This case is before me on a Report and Recommendation (R&R) filed on May 17, 2016, by the Honorable C.J. Williams, United States Magistrate Judge. *See* Doc. No. 23. Judge Williams recommends that I affirm a decision by the Commissioner of Social Security (the Commissioner) denying plaintiff James Craig Greiner Social Security Disability benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. (Act).

Greiner has filed timely objections (Doc. No. 26) to the R&R and the Commissioner has filed a response (Doc. No. 29) to the objections. The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II. APPLICABLE STANDARDS

### A. *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir.

2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of

benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

### B. *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the

3

definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III. THE R&R

Judge Williams noted that Greiner suffered an injury to his left shoulder in January 2011 that required two surgical procedures. Doc. No. 23 at 3. Judge Williams further explained that Greiner's current claim of disability is based largely on tailbone pain that allegedly makes it painful for him to sit or stand. *Id*.

Judge Williams reviewed the ALJ's evaluation of medical evidence, the ALJ's credibility determination and the Appeals Council's decision to reject certain medical records submitted after the ALJ's decision. Judge Williams set out the standards for evaluating a treating source opinion evidence as follows:

> An ALJ must give a treating physician's opinion controlling weight, but only if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other medical evidence. *House v. Astrue*, 500 F.3d 741, 744 (8th Cir. 2007). An ALJ need not give any weight to a treating physician's opinions that a claimant is disabled as that is a conclusion reserved to the Commissioner to make. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (doctor's opinion that claimant is disabled involves issue reserved to Commissioner and is not the type of medical opinion to which Commissioner gives controlling weight). Moreover, the ALJ acted within his zone of choice in discounting claimant's treating physician's opinions under the facts of this case.

4

> A "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." 20 C.F.R. § 404.1502. Dr. Folchert did not, however, treat claimant during the period when claimant asserts he was disabled. *See, e.g.*, *Postels v. Barnhart*, 55 Fed. App'x 392, 393 (8th Cir. 2003) ("The ALJ properly rejected the retrospective testimony of Postels's treating physicians because they had limited contact with Postels during the relevant time period."); *Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir. 1997) (affirming an ALJ's rejection of a doctor's opinion when the doctor did not treat the claimant during the period of alleged disability). *See also Saxon v. Astrue*, 781 F. Supp. '2d 92, 103 (N.D.N.Y. 2011) (finding no error for ALJ to reject treating physician's opinion when physician did not see claimant during period of alleged disability).

*Id*. at 12. Judge Williams found that the ALJ properly discounted the opinion of Kevin Folchert, M.D., due to the lack of supporting medical evidence and inconsistencies with other medical records.

Addressing Greiner's argument that the ALJ improperly assessed his credibility, Judge Williams set out the standards for credibility as follows:

> When determining residual functional capacity, an ALJ must evaluate the claimant's credibility regarding his subjective complaints. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). In doing so, an ALJ must consider objective medical evidence and any evidence relating to a claimant's daily activities; duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ does not have to discuss each Polaski factor as long as the ALJ recognizes and considers the Polaski analytical framework. *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). "Although the ALJ may disbelieve a claimant's allegations of pain, credibility determinations must be supported by substantial evidence." *Jeffery v. Sec'y of Health & Human Servs.*, 849 F.2d 1129, 1132 (8th Cir. 1988) (internal citation omitted). "Moreover, the ALJ must make express credibility determinations and set forth the inconsistencies in the record that lead him to reject the claimant's complaints." *Id*. "Where objective evidence does not fully support the degree of severity in a claimant's

subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (internal citation omitted). In evaluating a claimant's subjective complaints of pain, an ALJ may rely on a combination of his personal observations and a review of the record to reject such complaints. *Lamp v. Astrue*, 531 F.3d 629, 632 (8th Cir. 2009). The ALJ may not solely rely on his personal observations to reject such claims. Id. Thus "[s]ubjective complaints can be discounted [by the ALJ] where inconsistencies appear in the record as a whole." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) (citing to *Polaski* opinion).

*Id*. at 13-14. Judge Williams noted that the ALJ referenced the *Polaski* factors and reviewed the objective medical evidence at length. *Id*. at 14. Judge Williams found that the ALJ properly considered Greiner's failure to seek ongoing treatment for his alleged impairments. *Id*. at 14-15. Judge Williams further found that the medical evidence does not support Greiner's subjective complaints of disabling pain. *Id*. at 15. Thus, Judge Williams concluded that the ALJ's credibility assessment was within the zone of choice afforded to the ALJ. *Id*. at 15.

Addressing Greiner's claim that the Appeals Council incorrectly rejected his late-submitted evidence, Judge Williams explained the standards for the admission of post-hearing evidence as follows:

"When the Appeals Council denies review of an ALJ's decision after reviewing new evidence, '[courts] do not evaluate the Appeals Council's decision to deny review, but rather [courts] determine whether the record as a whole, including the new evidence, supports the ALJ's determination.'" *McDade*, 720 F.3d at 1000 (quoting *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000)). A remand is proper only if the new evidence is relevant and probative of the claimant's condition for the time period for which the benefits were denied. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). *See also Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991) (holding that new evidence is relevant only if it relates to claimant's condition on or before the ALJ's decision).

*Id*. at 16. Judge Williams found that the Appeals Council properly rejected additional evidence submitted by Greiner as it was not relevant to the ALJ's decision. *Id*. at 16-17.

6

## IV. DISCUSSION

### A. Greiner's Objections

Greiner objects to Judge Williams' findings (1) that the ALJ properly weighed Dr. Folchert's opinion, (2) that the ALJ appropriately evaluated his credibility and (3) that the Appeals Council properly rejected the later submitted medical records. I will review these issues *de novo*.

### B. Dr. Folchert's Opinion

Dr. Folchert treated Greiner prior to the alleged onset date and saw him on one occasion during the relevant period. AR 755-58. Dr. Folchert submitted a physical capacity evaluation, a medical impairment evaluation and two letters. AR 871-80.

During the examination that occurred during the relevant time period, Greiner reported no complaints of tailbone pain. AR 755-58. Instead, his sole complaint was blurred vision. *Id*. Dr. Folchert did not perform a musculoskeletal exam during this visit but nonetheless diagnosed Greiner with coccyx pain. AR 758. This suggests that the diagnosis was based upon Greiner's subjective complaints. AR 758. Additionally, Dr. Folchert did not list tailbone pain under either "past medical" or "other medical history" listings. *Id*.

In a physical capacity evaluation dated December 4, 2012, Dr. Folchert found that Greiner could work a maximum of eight hours per day but could only stand, sit and walk for a total of two hours each during a workday. AR 871-73. Dr. Folchert opined that Greiner could frequently lift up to 10 pounds, occasionally lift 11-20 pounds, seldom lift 21-50 pounds and never lift 51-100 pounds. AR 871. Dr. Folchert found no restrictions with regard to reaching in all directions except overhead, grasping, fine manipulations (fingering) or in foot controls. *Id*. However, he found that Greiner could seldom bend (stoop), squat (crouch), climb or reach above shoulder level and could occasionally crawl. AR 872. In evaluating Greiner's pace of work, Dr. Folchert opined that in addition to

7

scheduled breaks, he would need to walk around and leave a work station every 15-20 minutes, shift from sitting, standing or walking at will (and every 15-20 minutes) and lie down during his work shift 2-4 times for an hour on average. *Id.* Dr. Folchert did not provide any information in the section designated for "remarks (on above, or other functional limitations)." AR 873.

Within the medical impairment evaluation, Dr. Folchert noted that he had treated Greiner for 12 years on a regular basis and reported that the only disabling condition present was coccyx pain. AR 874. Dr. Folchert opined that prolonged sitting, walking and work activities would increase Greiner's pain during the day. AR 875. He also wrote that there were no treatments available for Greiner's condition. *Id.* Dr. Folchert provided no information under the "Laboratory Findings" section of the form. AR 876.

In a letter dated February 19, 2013, Dr. Folchert wrote that an x-ray showed a possible bilateral pars defect with a recommendation to obtain a CT scan of this area. AR 877. As a result, Dr. Folchert referred Greiner to Michael T. Espiritu, M.D., for a CT scan that ultimately revealed an intramuscular lipoma of the proximal left gluteus muscle but no bony abnormalities. *Id.* Dr. Folchert reported that while Greiner experienced temporary relief from a cortisone injection, the pain returned and Greiner was referred to Todd C. Johnson, M.D. *Id.* According to Dr. Folchert, Dr. Johnson performed a sacrococcygeal injection but Greiner continued to have persisting tailbone pain. *Id.*

In a second letter, dated March 14, 2014, Dr. Folchert wrote that one of Greiner's biggest issues was his left shoulder, opining that Greiner has restrictions with regard to lifting, pushing and pulling. AR 879-80. Dr. Folchert noted that Greiner had a tailbone injury in January of 2011 with persistent tailbone pain. AR 880. Finally, Dr. Folchert wrote that he knew Greiner well and believed that he would be working if he was able to do so. *Id.* Dr. Folchert concluded by expressing a belief that Greiner is permanently disabled. *Id.*

8

### 1. *The ALJ's reasoning*

The ALJ noted that Dr. Folchert was a treating provider but stopped treating Greiner three days after the alleged onset date. AR 20. The ALJ found that Dr. Folchert's opinion was internally inconsistent in that it noted limitations of two hours each for sitting, walking and standing during a workday, but nonetheless indicated that Greiner could work for eight hours a day. *Id.* Additionally, the ALJ observed that Dr. Folchert did not impose any limitations on Greiner's use of his arms, despite documented problems with his left arm. *Id.* As for Dr. Folchert's opinion that tailbone pain was a disabling condition, the ALJ stated that the only objective finding that potentially related to such pain was a lipoma that was later found to be unrelated to Greiner's symptoms. *Id.* The ALJ gave Dr. Folchert's opinion little weight due to the lack of supporting objective medical evidence. *Id.* The ALJ also discounted Dr. Folchert's statement that Greiner was disabled, noting that this is a determination reserved to the Commissioner. AR 21.

### 2. *Analysis*

An ALJ may discount a treating source opinion if it is unsupported by objective medical evidence. *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012). Having carefully reviewed the entire record, I agree that Dr. Folchert's opinion was not supported by objective medical evidence. Here, Dr. Folchert saw Greiner on only one occasion during the relevant time period, three days after the alleged onset date. AR 20, 755-58; *see Postels*, 55 Fed. App'x at 393 ("The ALJ properly rejected the retrospective testimony of Postels's treating physicians because they had limited contact with Postels during the relevant time period."). Additionally, while Dr. Folchert noted the presence of a lipoma, a later CT scan revealed that this was not the cause of his symptoms. Instead, Dr. Espiritu, an orthopedic spine surgeon, concluded that Greiner's pain was "most consistent with some type of nerve pain" and referred Greiner to neurology. AR 451.

9

Thus, the record does not support Greiner's claim that the finding of a lipoma is objective evidence supporting his claim of disabling tailbone pain. In addition, while Dr. Folchert's medical impairment evaluation form included a section for the physician to list objective medical testing, Dr. Folchert left that section blank. AR 874-76. The ALJ was entitled to discount Dr. Folchert's opinion on grounds that it was not supported by objective medical evidence. *See Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007) (holding an ALJ properly discounted a treating physician's opinion where the limitations listed on the form stood alone and were not supported by medical records).

I further find that the ALJ properly discounted Dr. Folchert's opinion due to various inconsistencies. For example, and as the ALJ noted, Dr. Folchert reported that Greiner could work up to eight hours a day, but also stated that he could sit, stand and walk for only two hours during each work day (for a total of just six hours). AR 20, 871; *see Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) (ALJ may disregard a treating source opinion if that opinion renders inconsistent opinions that undermine the credibility of such opinion.) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). In addition, while Dr. Folchert's evaluation in December 2012 noted no limitations as to reaching, grasping and fine manipulations, his first letter (written just two months later) stated that Greiner has had range of motion problems and disabling pain with regard to his left shoulder since January 2011. AR 871, 877. Dr. Folchert's second letter, written in March 2014, again noted left shoulder issues that were not described in Dr. Folchert's prior evaluation. AR 879. I agree with the ALJ that Dr. Folchert's opinion was both internally inconsistent and inconsistent with the record as a whole.

Greiner argues that the records concerning his injection procedure provide support for Dr. Folchert's opinion. He contends that because Dr. Johnson made reference to an MRI that revealed "L5-S1 changes with defect and foraminal stenosis," AR 476, the objective evidence supports Dr. Folchert's assessment. However, in the same progress

note, Dr. Johnson reported that Greiner both (a) denied any radicular symptoms and (b) stated that a prior injection "gave him great benefit." *Id.* In addition, the record contains evidence of other scans that revealed normal results. AR 767, 881. I find that the medical evidence of record supports the ALJ's evaluation of Dr. Folchert's opinion.

Finally, the ALJ discounted Dr. Folchert's statement that Greiner was permanently disabled. As this is an issue reserved to the Commissioner, I find no error with the ALJ's decision not to credit this opinion. *Ellis*, 392 F.3d at 994 (disability determination is reserved to the Commissioner). Based on my de novo review, I agree with Judge Williams that the ALJ's evaluation of the medical evidence is supported by substantial evidence in the record as a whole. I therefore overrule Greiner's objection to that portion of the R&R.

## C. The Credibility Assessment

Greiner argues that the ALJ's credibility assessment is not supported by substantial evidence. He contends that the ALJ failed to assess the record as a whole and that the medical evidence supports his subjective complaints. The Commissioner disagrees.

The ALJ referenced the relevant factors for considering a claimant's credibility and then described, in detail, two primary reasons for concluding that Greiner's allegations of disabling symptoms were not entirely credible: (1) Greiner did not seek ongoing treatment after the alleged onset date and (2) the medical evidence of record does not support Greiner's complaints. AR 17-20. Based on my de novo review, I conclude that these are good reasons that are supported by substantial evidence. In addition, I note (as did Judge Williams) that Greiner's activities of daily living were not consistent with a claim of total disability. Those activities included driving, walking, lifting up to 40 pounds, personal care, shopping for groceries and household chores such as preparing meals, washing dishes and mowing the yard. Doc. No. 23 at 15 (citing AR 74, 89, 247-49); *see Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009).

11

Because I find no error with regard to the ALJ's credibility determination, I overrule Greiner's objection to this portion of the R&R.

### D. *New Evidence*

Finally, Greiner contends that the Appeals Council improperly failed to consider new evidence submitted after the hearing. He cites *Williams v. Sullivan*, 905 F.2d 214 (8th Cir. 1990), to argue that remand is necessary because the new medical records relate back to the period on or before the date of the ALJ's decision. Doc. No. 26 at 9. Judge Williams found that the new records do not relate back. Doc. No. 23 at 16-18. I agree.

The ALJ's decision is dated May 5, 2014. AR 23. Greiner's new evidence consists of medical records for the period of time between January 9, 2015, and April 24, 2015. AR 30-37, 40-63. Nothing in those records is illustrative of Greiner's condition during the relevant period. Instead, they reflect treatment (including a surgical procedure) that occurred well after the ALJ's decision. Because the new records do not illustrate Greiner's condition during the applicable time period, the Appeals Council properly found that they are not relevant to Greiner's claim. As such, I overrule his objection to this portion of the R&R.

### V. CONCLUSION

For the reasons set forth herein:

1. Greiner's objections (Doc. No. 26) to the magistrate judge's report and recommendation are **overruled**;
2. I **accept** United States Magistrate Judge Williams' May 17, 2015, report and recommendation (Doc. No. 23) without modification. *See* 28 U.S.C. § 636(b)(1).

3. Pursuant to Judge Williams' recommendation:

    a. The Commissioner's determination that Greiner was not disabled is **affirmed**; and

    b. Judgment shall enter against Greiner and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 26th day of July, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE